UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KIMBERLY MONAHAN,<br>    Plaintiff, | : | CIVIL ACTION NO.<br>3:10-CV-00638(JCH) |
| v. | : | |
| NRA GROUP L.L.C. d/b/a NATIONAL<br>RECOVERY AGENCY; AND DOES<br>1–10, INCLUSIVE,<br>    Defendant. | : | SEPTEMBER 6, 2011 |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 23)**

**I.    INTRODUCTION**

Plaintiff, Kimberly Monahan, brings this suit against NRA Group, doing business as the National Recovery Agency ("NRA"), claiming that NRA violated the Fair Debt Collection Practices Act ("FDCPA") while trying to collect a debt from Monahan. In addition, Monahan brings common law claims against NRA for invading her privacy and intentionally inflicting emotional distress upon her.[1]

NRA has filed for summary judgment on all claims. For the following reasons, the court grants summary judgment on all remaining claims.

---

[1] Monahan originally asserted several statutory claims under the FDCPA, as well as a claim under the Connecticut Unfair Trade Practices Act ("CUTPA"), in addition to the claims described above. See Compl. at ¶¶20–30, ¶¶ 39–42. In Monahan's opposition brief to NRA's Motion for Summary Judgment, she withdraws her claim under CUTPA, as well as all claims under the FDCPA except for her claim under 15 U.S.C. § 1692d(2). See Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 2 (hereafter "Mem. Opp. Summ. J."). Accordingly, the court will dismiss the withdrawn claims and only consider the remaining claims.

1

## II. FACTUAL BACKGROUND[2]

On September 30, 2009, NRA sent Monahan an initial collection letter regarding an unpaid debt Monahan owed to Connecticut Natural Gas Corporation. See Local Rule 56(a)(1) Stmt. ¶ 1(hereafter "L.R. 56(a)(1) Stmt."); Def.'s Local Rule 56(a) Stmt. ¶ 1 (hereafter "L.R. 56(a) Stmt."). Monahan never wrote to NRA to dispute the debt or to request that NRA cease communications. See L.R. 56(a)(1) Stmt. ¶ 3–4; L.R. 56(a) Stmt. ¶ 3–4.

Between October 2009 and May 2010, NRA placed many phone calls to Monahan, all of which were recorded in NRA's records. See L.R. 56(a)(1) Stmt. ¶ 7; L.R. 56(a) Stmt. ¶ 7; Kusic Aff., Ex. A.[3] The parties dispute how many times, in calls initiated by NRA, an NRA representative actually spoke with Monahan; however, the parties agree that Monahan initiated telephone contact with NRA three times between October 2009 and May 2010.[4] See L.R. 56(a)(1) Stmt. ¶¶ 9–10; L.R. 56(a) Stmt. ¶¶ 9–10. On several occasions, NRA called Monahan several times in a given week, usually once a day. See Kusic Aff., Ex. A. Monahan informed NRA several times that she was unemployed and could not pay the debt. See L.R. 56(a) Stmt. ¶¶ 15, 17, 19, 21, 26. NRA representatives did not scream at Monahan, call her names, or use profanity during any conversation with Monahan. L.R. 56(a)(1) Stmt. ¶ 5–6; L.R. 56(a) Stmt. ¶ 5–

---

[2] The court sets forth here the material facts not in dispute and facts proposed by the plaintiff that are supported by evidence in the record.

[3] Although Monahan admits this in her Statement of Material Facts, in her opposition brief, Monahan asserts that NRA's record does not accurately reflect all the calls she received. See Mem. Opp. Summ. J. at 8 (referring to the record as the "May 27, 2010 Fact Sheet"). Monahan, however, offers no evidence to support her assertion. Accordingly, she fails to raise an issue of material fact regarding the allegedly missing calls, and the court will treat the call log produced by NRA as complete. See L.R. 56(a)(1) Stmt. ¶ 7; L.R. 56(a) Stmt. ¶ 7.

[4] Though NRA provided the court with a record of all calls, neither party has provided the court with any explanation for it to understand the codes and abbreviations used in the record. As a result, the court cannot credit many of the assertions set forth by NRA regarding what the call records show.

6.

## III. STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a

3

non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

## IV. DISCUSSION

Monahan asserts a statutory claim under the FDCPA, as well as common law claims under Connecticut law for invasion of privacy and intentional infliction of emotional distress.

### A. Fair Debt Collection Practices Act

Congress passed the FDCPA in an effort to "protect consumers from . . . unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." S. Rep. No. 95-382, at 1 (1977). Section 1692d of the FDCPA prohibits a debt collector from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse" a debtor. 15 U.S.C. § 1692d. In particular, section 1692d(2) prohibits a debt collector from using obscene or profane language, or "language the natural consequence of which is to abuse the hearer." See 15 U.S.C. § 1692d(2).

In evaluating claims under various sections of the FDCPA, courts have adopted a "least sophisticated consumer" standard. See Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010) (applying the least sophisticated consumer standard to a claim under section 1692g of the FDCPA); Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1179 (11th Cir. 1985) (applying the standard to section 1692d). This standard is meant to protect the naïve consumer; however, it is not meant to protect the unreasonable consumer. See Ellis, 591 F.3d at 135 ("[T]his court has been careful not to conflate lack of sophistication with unreasonableness.").

4

Section 1692d is meant to protect debtors from oppressive and outrageous conduct, but not from every negative consequence of debt collection. See Bieber v. Assoc. Collection Servs., Inc., 631 F.Supp. 1410, 1417 (D.Kan. 1986) ("Some inconvenience or embarrassment to the debtor is a natural consequence of debt collection."). Courts have interpreted section 1692d(2) to prohibit profanity and obscenity, as well as offensive language that is akin to profanity or obscenity. See Jeter, 760 F.2d at 1178 ("Such offensive language might encompass name-calling, racial or ethnic slurs, and other derogatory remarks which are similar in their offensiveness to obscene or profane remarks."). A court may rule as a matter of law that particular conduct does not go so far as to violate section 1692d(2). See Jeter, 760 F.2d at 1179–80; Unterreiner v. Stoneleigh Recovery Assocs., LLC, 2010 WL 2523257 at *1–2 (N.D. Ill. June 17, 2010) (finding conduct does not violate section 1692d(2) where plaintiff alleges a debt collection agency employee screamed at her and asked, "how could you go and max out a card like that?"); Thomas v. LDG Fin. Servs., LLC, LLG, 463 F.Supp.2d 1370, 1373 (N.D.Ga. 2006) (finding plaintiff fails to state a claim where defendants yelled at her and told her "they were going to get their money one way or another").

Monahan asserts that NRA violated section 1692d(2) with statements such as: "activity is going to keep on coming, that's what we do;" "[we will] just call and call until she can pick up;" and "further collections will continue." See Mem. Opp. Summ. J. at 9.[5] Monahan admits that no NRA representative used profanity, called her names, or

---

[5] In further support of her assertions, Monahan submitted an "affidavit," which is not dated, notarized, or signed under penalty of perjury. See Doc. No. 36. This document does not meet the requirements of a sworn affidavit or an unsworn declaration. See Fed. R. Civ. P. 56(c)(4); 28 U.S.C. § 1746. Accordingly, the court will not consider it. See Reynolds v. Sealift, Inc., 311 Fed. Appx. 422, 425 (2d Cir. 2009).

5

screamed at her.  L.R. 56(a) Stmt. ¶¶ 5–6.  Even employing the least sophisticated consumer standard, and taken in the light most favorable to Monahan, these statements are not akin to obscenity or profanity.   Accordingly, Monahan fails to raise a material issue of fact to support her claim that NRA's statements went so far as to violate section 1692d(2).

      B.      <u>State Law Claims</u>

Having granted summary judgment in favor of NRA on Monahan's federal claims, the court declines to exercise supplemental jurisdiction over Monahan's state law claims.  Under 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  When federal claims are dismissed before trial, the basis for retaining jurisdiction is weak.  See <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966).  Accordingly, the court declines to exercise jurisdiction over the state law claims, and those claims are dismissed.  See <u>Egbarin v. Lewis, Lewis, & Ferraro, LLC</u>, 2006 WL 236846, at *11 (D.Conn. Jan. 31, 2006).

**V.    CONCLUSION**

For the foregoing reasons, the court grants defendant's Motion for Summary Judgment (Doc. No. 23) with regard to Monahan's FDCPA claim.  The court declines to exercise jurisdiction over Monahan's state law claims.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 6th day of September, 2011.

                                                                /s/ Janet C. Hall
                                                               Janet C. Hall
                                                               United States District Judge